## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TRUDY HOANG,

               **Plaintiff,**

    **v.**                                        1:13-cv-3796-WSD

DEKALB HOUSING AUTHORITY
(SECTION 8) et al.,

             **Defendants.**

### OPINION AND ORDER

This matter is before the Court, pursuant to 28 U.S.C. § 1915(e)(2)(B), for a determination of whether Plaintiff Trudy Hoang's ("Plaintiff") Complaint [3] is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.[1]

## I.    BACKGROUND

On November 11, 2013, Plaintiff submitted an Application to Proceed in District Court Without Prepaying Fees or Costs [1] ("IFP Application").  On November 18, 2013, Magistrate Judge Janet F. King found that Plaintiff met the financial requirements to proceed *in forma pauperis* and granted Plaintiff's IFP

---

[1] On March 14, 2014, the Court entered an Order [9] reviewing Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2)(B) (the "March 14th Order").  The March 14th Order contained a clerical error, and it is hereby vacated.  This Order supersedes the March 14th Order.

Application.  Plaintiff's Complaint was submitted to the Court for a frivolity determination.

Plaintiff's Complaint largely is an incoherent and rambling narrative of Plaintiff's explanation of issues involving her housing at the Sienna Ridge Apartments, managed by First Communities Management.  While difficult to discern, her housing issues appear to be centered on a claim that she has a medical condition, perhaps asthma, impacted by conditions in the housing she rents at the Sienna Ridge Apartments.  While unclear, her references in the Complaint to vouchers and her reference in the style of the Complaint to "SECTION 8" suggest that she may be receiving government assistance for her housing.

Plaintiff appears to represent that she has complained to the DeKalb County Housing Authority and other government agencies about her housing.  The core of her allegations is that she suffers from a physical ailment that Defendants have not "accommodated."  She asserts that at some point she entered into a conciliation agreement, but it is not clear with whom she entered into this agreement or the agreement terms.[2]  She appears to claim that one or more of Defendants breached the agreement in some way and did so by bullying and intimidating Plaintiff.

---

[2] Plaintiff appears to claim she provided some medical information to one or more of Defendants and that this information was disclosed in some respect, violating Plaintiff's privacy.  This claim is uncertain and unsupported by any specific allegations.  If there is a claimed privacy violation, it is not sufficiently alleged to state a plausible claim.

Finally, Plaintiff claims various deficiencies in where she is living, apparently asserting it is not clean, has snakes in it, and may have suffered flood damage. She seems to assert that various of the government Defendants failed to enforce safety and health codes when she complained, but this allegation and against whom it is asserted is not clear.

Reading the Complaint liberally and assuming all of the intelligible facts in Plaintiff's favor and because the claim relates to housing, the Court determines that Plaintiff appears to assert a disability discrimination claim under the Fair Housing Act ("FHA") and under Title III of the Americans with Disabilities Act ("ADA").[3] The claim is at least asserted against the Sienna Ridge Apartments, which, for the purpose of this Order, the Court assumes owns the property at issue in this case.[4]

---

[3] The Court liberally construes Plaintiff's references to Title III of the Civil Rights Act of 1968 as alleging a violation of Title III of the ADA because Plaintiff has alleged disability-based discrimination in the two counts of her Complaint. (Compl. at 2).

[4] Other than what the Court considers FHA and ADA claims, the Court finds the main of Plaintiff's Complaint to be a shotgun pleading. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim" that shows that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a "shotgun pleading" that violates Rule 8(a)(2). Byrne v. Nezhat, 261 F.3d 1075, 1129–30 (11th Cir. 2001). Shotgun pleadings fail to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279–80 (11th Cir. 2006). The problem with such pleadings "is not that [courts] know that the plaintiffs cannot state a claim but

## II.  DISCUSSION

### A.  Dismissal of a Frivolous, Malicious, or Implausible Complaint

Section 1915(e)(2) of Title 28 requires a court to dismiss an IFP case if the court determines that an action is frivolous, malicious, or fails to state a claim on which relief may be granted.[5]  A claim is frivolous when it "has little or no chance of success," that is, when it appears "from the face of the complaint that the factual allegations are clearly baseless or that the legal theories are indisputably

rather that [they] do not know whether they have." Id. at 1280.  The Eleventh Circuit has explained that, "unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 367 (11th Cir. 1996).  Plaintiff's hand-written, difficult-to-read filing, consisting of numerous unstructured allegations and run-on sentences, fails to satisfy the minimum requirements of a complaint, except for the FHA and ADA claims, and constitutes a "shotgun pleading."  The length and disorganization of the "complaint" precludes the Court from being able to evaluate whether Plaintiff has asserted a claim and, if so, whether it has merit.  The "complaint" filed by Plaintiff is, except for the FHA and ADA claims, required to be dismissed. See 28 U.S.C. § 1915(e)(2) (requiring the district court to dismiss an action brought by a plaintiff proceeding in forma pauperis if the action "fails to state a claim on which relief may be granted").  Because of Plaintiff's pro se status, the Court determines that any claims, other than the FHA and ADA claims, should be dismissed without prejudice to allow Plaintiff the opportunity to re-file after drafting a proper complaint.

[5] A complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

meritless." <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993); <u>accord</u> <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (stating that a claim is frivolous "where it lacks an arguable basis either in law or in fact").

      B.    <u>Discrimination Under the Fair Housing Act</u>

     The FHA prohibits a landlord from discriminating against a tenant based on the tenant's handicap, and it creates a private cause of action for a tenant against a landlord who does so discriminate. <u>See</u> 42 U.S.C. §§ 3604(f), 3613. To "discriminate" under the FHA includes the refusal to make reasonable and necessary accommodations. <u>See</u> <u>id.</u> § 3604(f)(3)(B). Specifically, a landlord is liable under the FHA if it "[1] refus[es] to make [2] reasonable accommodations in rules, policies, practices, or services, when such accommodations [3] may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." <u>Schwarz v. City of Treasure Island</u>, 544 F.3d 1201, 1218–19 (11th Cir. 2008) (first, third, and fourth alterations in original) (quoting 42 U.S.C. § 3604(f)(3)(B)). Liability under the FHA extends to the leasing agents of property owners. <u>See</u> <u>Dillon v. AFBIC Dev. Corp.</u>, 597 F.2d 556, 562–63 (5th Cir. 1979); <u>see also</u> Robert G. Schwemm, <u>Housing Discrimination Law and Litigation</u> § 12B:2.

     To be "necessary," there must be a direct linkage between the proposed accommodation and the equal opportunity to be provided—a relationship "akin to

causation." Caron Found. of Fla. v. City of Delray Beach, 879 F. Supp. 2d 1353, 1366 (S.D. Fla. 2012) (citing Bryant Woods Inn, Inc. v. Howard County, 124 F.3d 597, 604 (4th Cir. 1997)); see also Schwarz, 544 F.3d at 1225 ("[T]he necessity element does require [defendant] to show that [the requested accommodation] addresses a need caused by residents' [handicap]."); Giebeler v. M & B Assocs., 343 F.3d 1143, 1155 (9th Cir. 2003) ("To prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." (internal quotation and citation omitted)).

Here, Plaintiff alleges that she has a medical condition, asthma it appears, and that Sienna Ridge Apartments refused Plaintiff's request for a housing accommodation to remove the conditions which Plaintiff alleges triggered or aggravated Plaintiff's ailment. At this stage of the litigation, Plaintiff has alleged, albeit barely, sufficient facts to proceed IFP on her FHA claim against Defendant Sienna Ridge Apartments.

C.      Americans with Disabilities Act of 1990

The ADA, 42 U.S.C. §§ 12101 et seq., is comprehensive legislation which addresses discrimination against disabled individuals. The Act has three sections: Title I regulates discrimination in the workplace; Title II prohibits discrimination

by public entities; and Title III prohibits discrimination by private entities in places of public accommodation.  Title III applies to Plaintiff's claims in this litigation.

Title III provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182.

The Eleventh Circuit has not directly addressed whether individual liability is precluded for violations of Title III.[6]  The legislative history of the act reveals that the original bill did not identify the regulated entity, and the language "any person who owns, leases (or leases to), or operates a place of public accommodation" was added later to restrict the scope of liability.  See Shotz v. City of Plantation, 344 F.3d 1161, 1168 n.8 (11th Cir. 2003); see also Walker v. Snyder, 213 F.3d 344, 346 (7th Cir. 2000), abrogated on other grounds by Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912–13 (7th Cir. 2003) ("[T]he ADA addresses its rules to employers, places of public

---

[6] The Eleventh Circuit has held that individual liability is precluded under Titles I and II of the ADA, but that it is not precluded for violations of the ADA's anti-retaliation provision where the act or practice opposed by the plaintiff is made unlawful by the ADA provisions concerning public services.  Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007); Emmett v. Walker, 2008 WL 2755848, at *5 (S.D. Ga. July 15, 2008) (citing Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)).

accommodation, and other organizations, not to the employees or managers of
these organizations.").

     "Under Title III of the ADA an individual may only be liable if he or she
'owns, operates, or leases the public accommodation.'"  Petrano v. Old Republic
Nat'l Title Ins. Co., No. 1:12-cv-86-SPM-GRJ, 2012 WL 2192258, at *7 n.6 (N.D.
Fla. June 13, 2012) (quoting Coddington v. Adelphi Univ., 45 F. Supp. 2d 211, 215
(E.D.N.Y. 1999)).  But see Steere v. George Washington Univ., 368 F. Supp. 2d
52, 57–58 (D.D.C. 2005) ("Under Title III of the ADA, as under Titles I and II,
[property owners], not their employees, are the ones who own, lease, or operate
places of public accommodation and are therefore subject to ADA liability."); cf.
Mason, 82 F.3d at 1009 (no individual liability for an agent or employee of an
employer under Title I of the ADA).  Courts which have found individuals
personally liable under Title III have made the initial necessary finding that those
individuals controlled the actions or directed the affairs of the corporate entity
which owned the public accommodation, or had the power to facilitate any
necessary accommodation.  See, e.g., Coddington, 45 F. Supp. 2d at 217 (noting
Congressional intent to exclude individual liability under Title III of the ADA and
finding the scope of "operates" to be limited to those individuals who have the
power to facilitate any necessary accommodation); United States v. Morvant, 843
F. Supp. 1092 (E.D. La. 1994) (finding individual defendant dentist liable under

Title III despite operating his practice as a corporation since he was the sole owner, director, and president of the corporation and was charged directly with refusing treatment in violation of the ADA).[7]  Plaintiff has not alleged whether the Sienna Ridge Apartments are owned by an individual or an organizational entity.

Thus, to prevail under Title III of the ADA, a plaintiff must generally establish (1) that he is an individual with a disability; (2) that the defendant owns, operates, or leases a place of public accommodation; and (3) that the defendant denied him full and equal enjoyment of the goods, services, facilities, or privileges offered by the defendant on the basis of his disability.  See 42 U.S.C. § 12182(b)(2)(A)(iv); Schiavo v. Schiavo, 403 F.3d 1289, 1299 (11th Cir. 2005); Petrano, 2012 WL 2192258, at *7 n.6.

---

[7] The term "operates" is not defined by the statute.  Using the well-established canons of statutory construction, the starting point for statutory interpretation is the language of the statute itself.  United States v. DBB, Inc., 180 F.3d 1277, 1281 (11th Cir. 1999).  Courts are to assume that words in a statute are used and interpreted based on their common and ordinary meaning.  Id.  In the context of the statute here, to "operate" means "to bring about, effect," "to cause to function: work," or "to put or keep in operation."  See http://www.merriam-webster.com/dictionary/operate.  The Fifth and Ninth Circuits also have defined "operates" in the context of Title III of the ADA under its ordinary and common meaning.  The two appellate courts interpreted "operates" in the context of Title III to mean "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage."  Lentini v. Cal. Ctr. for the Arts, Escondido, 370 F.3d 837, 849 (9th Cir. 2004) (citing Neff v. Am. Dairy Queen Corp., 58 F.3d 1063, 1066 (5th Cir. 1995)).

"Although a private right of action for injunctive relief does exist under the ADA, it is uncontested that there is no private right of action for damages." <u>Jairath v. Dyer</u>, 154 F.3d 1280, 1283 (11th Cir. 1998).  An individual bringing a claim under Title III of the ADA can only pursue injunctive relief because monetary damages are only available in actions initiated by the Attorney General.  <u>Id.</u> at 1283 n.7.

As stated above, Plaintiff has alleged that she has a medical condition which the Court infers that Plaintiff claims is a disability, that the Sienna Ridge Apartment complex is a place of public accommodation, and that she has been denied the full enjoyment of the premises.  Additionally, Plaintiff seeks relief from the Sienna Ridge Apartments discriminating against her on the basis of her disability.  Plaintiff has alleged sufficient information to support a claim that Sienna Ridge Apartments, directly or indirectly, leases or operates the apartments and has the power and authority to facilitate any necessary accommodations.

Thus, at this stage of the litigation, Plaintiff has alleged sufficient facts to proceed IFP on her ADA claim against Defendant Sienna Ridge Apartments.[8]

---

[8] The Court determines at this stage of the litigation that Plaintiff has failed to allege any plausible claims against Defendants other than Sienna Ridge Apartments, although Plaintiff may seek to amend to allege other claims against other Defendants.  Any motion to amend must comply with the Federal Rules of Civil Procedure and the Court's Local Rules.

D.   Service of Process

Rule 4(c)(3) of the Federal Rules of Civil Procedure states that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . . ."

Having authorized Plaintiff to proceed IFP in this action, the Court orders service be made by the United States Marshal Service.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's FHA and ADA claims against Defendant Sienna Ridge Apartments are **ALLOWED TO PROCEED**.  Plaintiff's remaining claims against Defendant Sienna Ridge Apartments, and all of Plaintiff's claims against all other Defendants, are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B).

The Clerk is **DIRECTED** to send Plaintiff copies of a USM 285 form, summons, and initial disclosures form.  Plaintiff is **DIRECTED** to complete the USM 285 form, the summons, and the initial disclosures form and return one for Defendant to the Clerk of Court within twenty (20) days of the entry date of this Order.  The Clerk is **DIRECTED** to resubmit this action to the undersigned if

11

Plaintiff fails to comply.  Plaintiff is warned that if she fails to provide accurate address information to the Clerk of Court for Defendant or fails to return the forms to the Clerk of Court within twenty (20) days of the entry date of this Order, this action may be dismissed for failure to obey a lawful order of the Court.  LR 41.3 A.(2), N.D. Ga.

Upon receipt of the forms by the Clerk, the Clerk is **DIRECTED** to prepare a service waiver package for Defendant.  The service waiver package must include, two (2) Notices of Lawsuit and Request for Waiver of Service of Summons (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first class postage for use by Defendant for return of the waiver form, one (1) copy of the complaint, one (1) copy of the initial disclosures form, and one (1) copy of this Order.  The Clerk shall retain the USM 285 forms and the summons.

Upon completion of the service waiver package(s), the Clerk is **DIRECTED** to complete the lower portion of the Notice of Lawsuit and Request for Waiver form and to mail the service waiver package to Defendant.  Defendant has a duty to avoid unnecessary costs of serving the summons.  If Defendant fails to comply with the request for waiver of service, that Defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event Defendant does not return the Waiver of Service form to the Clerk of Court within thirty-five (35) days following the date the service waiver package was mailed, the Clerk is **DIRECTED** to prepare and transmit to the USMS a service package.  The service package must include the USM 285 form, the summons, and one (1) copy of the complaint.  Upon receipt of the service package(s), the USMS is **DIRECTED** to personally serve Defendant.  The executed waiver form or the completed USM 285 form shall be filed with the Clerk.

**SO ORDERED** this 19th day of March, 2014.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE